# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DIANE SWINNEY,

        Plaintiff,

v.                                               No. CIV 08-227 MV/ACT

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign corporation,
STATE FARM ADJUSTER CODY CHAVEZ,
and JOHN DOES 1-3,

        Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on Defendant State Farm Fire and Casualty Company's Motion to Strike Plaintiff Diane Swinney's Expert Witness Larry Vorba (Doc. No. 113, filed March 31, 2009).  For the reasons stated below, the Court will **DENY** the Motion.

    Defendant seeks to strike Plaintiff's expert witness Larry Vorba on the grounds that Mr. Vorba's Rule 26 report is not consistent with his deposition testimony and that his opinion is not reliable.  The Court, having reviewed Mr. Vorba's report and testimony, concludes that Defendant mischaracterizes Mr. Vorba's report and testimony.

    Defendant asserts that Mr. Vorba's report claims that Plaintiff's residence was struck and damaged by an F1 tornado.  (Motion at 2, 4, 7-8, 14-15).  Mr. Vorba's report states:

> The effects of the storm event on June 30, 2005 at or near the [Plaintiff's] residence *appear to coincide* with the damage effects of a moderate tornado outlined in the Fujita scale as an F1 Moderate tornado (FEMA 361 Table 3.1 attached)–"Roof surfaces are peeled off, windows are broken, some tree trunks are snapped, unanchored manufactured homes are overturned, attached garages may be destroyed."  Although the [Plaintiff's] residence did not suffer all of the damage effects listed, all of the effects were observed all around the [Plaintiff's] property following the event.

. . . .

> Irrefutable evidence of strong winds causing significant damage immediately adjacent to and all around the [Plaintiff's] residence, indicates that the residence was exposed to high winds and *possibly* tornadic activity during the storm of June 30, 2005.

(Vorba's Structural Engineering Investigation Report, Doc. No. 113-3 at 3, filed March 31, 2009, "Vorba's Report") (*emphasis added*).  Mr. Vorba's report does not assert that Plaintiff's residence was struck and damaged by an F1 tornado.  Instead, his report indicates that the damage at Plaintiff's residence is similar to the damage expected to result from an F1 tornado, and that the residence was exposed to high winds and *possibly* a tornado.

Defendant argues that "Mr. Vorba cannot determine to an engineering probability the upload force of wind to the Plaintiff's residence or garage, upon which [Conclusion] 1 of his opinion is based." (Motion at 4).  Mr. Vorba's Conclusion 1 states in part that "shifts to roof rafter support purlins [horizontal timbers supporting rafters] and separation of the struts from the purlins are consistent with reverse stresses created by wind uplifts on the roof." (Vorba's Report at 4).  Mr. Vorba supports his conclusion by calculating a range of uplift loads for a range of wind speeds and comparing those to an estimate of the force required to cause the separation.  (*Id.*).  In his deposition, Mr. Vorba stated that he did not determine the actual uplift load which would require knowing the size and number of nails in the roof, and how they are configured.  (Motion at 4-5).  He also stated that he was looking a relative values of what a pullout force would be to "get a feel for whether a high wind would create enough force to actually create some of those separations.  And it appeared that it would." (Motion at 4).

Defendant also argues that "Mr. Vorba also never even determined the force of wind required to cause the damage alleged." (Motion at 5).  Mr. Vorba's opinion is based upon visual inspections

2

of the property, the nature of the damages to the house, the fact that a thunderstorm with strong wind occurred on June 30, 2005, the damage to trees and buildings near Plaintiff's house, damage that occurred in the weeks and months following the storm.  (Vorba's Report at 1-3).  Plaintiff has not demonstrated that determining the force of wind is a necessary element of Mr. Vorba's opinion.

In his report, Mr. Vorba concludes that the movements and load shifts resulting from the strong winds "could have overstressed the storm drain line that leaked into the crawlspace" and "[f]looding the crawlspace could have initiated additional differential movements of the supplemental floor supports.  Most of these supports bear on surface soils, so any settlements of the subgrade soils due to consolidation aided by wetting would result in loss of load carrying capacity." (Vorba' Report at 4).  In his deposition, Mr. Vorba explained that because the vent for the sanitary line extends up through the roof, significant movement in the roof could twist the vent distressing a joint down in the floor below.  (*See* Motion at 5-6).

Defendant argues that Mr. Vorba could not testify to a reasonable degree of engineering probability that "somehow the wind caused a leak in this sanitary line that then caused water to leak through the stem wall which caused it to collapse which caused the resultant . . . settling damage in the home."  (Motion at 6).  Defendant quotes Mr. Vorba's deposition:

> Q.    ...[I]s it your opinion that the collapse of - I'm calling it a collapse, but the stone crushing on that stem wall resulted from water coming from that sanitary system?
>
> A.    I think that could have caused it, yes.
>
> Q.    And are you willing to swear to it by - to a reasonable degree of engineering probability?
>
> A.    Yeah. I mean I don't know - I don't see any other reason why it would.  I mean some - there's - I mean I could think of maybe a scenario where these two supports - when they come in and put these temporary supports in,

there's a very minimal amount of foundation preparation usually on - on the residential construction.  They come in and smooth off an area of the subgrade, try and find something firm and stack a couple of cement blocks up, put some wood shims on it and then create this support beam header.  And then the - and they - they'll jack that - the floor into a level position and set enough shim in there to stabilize it. . . .

Now, the only other thing I - that would concern me is what caused it to move if something didn't change in that subgrade.  I mean what caused the - those two - those two elements to actually drop.  And usually it's a water leak problem or there's an undermining of that support system, either by a tree root or scouring of the subgrade by infiltration of groundwater, something's changing the support capability of that area.  As so I'm - I'm just - since a lot of things point to this drain line and we did find it wet around there, that's - that's a probable cause of that to settle.

(Motion at 6-7).

Mr. Vorba answers the question whether he is willing to swear to his conclusion to a reasonable degree of engineering probability with "Yeah."  Defendant appears to rely on Mr. Vorba's subsequent statement "I mean I don't know - . . . ."  It is not clear from the transcript whether "I mean I don't know" refers to swearing to his opinion to a reasonable degree of engineering probability or instead refers to whether there are other possible explanations for the stem wall collapse.  At the end of his answer, Mr. Vorba does state that the leaking drain line is "a probable cause of that to settle."  More importantly, elsewhere in his deposition Mr. Vorba testified that his "testimony, reports and opinions today, are [ ] done within the realm of reasonable engineering probability."  (Response at 13, Doc. No. 117, filed April 14, 2009).

Defendant has not convinced the Court that "during his deposition, Mr. Vorba gave substantially different testimony than was included in his report."  (Motion at 11).  Nor has Defendant demonstrated that Mr. Vorba's opinion is unreliable.  The Court will deny Defendant's Motion to Strike Plaintiff's expert Larry Vorba.

4

**IT IS SO ORDERED.**

Dated this 3rd day of August, 2009.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

*Attorneys for Plaintiff:*

M. Terrence Revo
Roger I. Smith
10400 Academy Rd. NE Suite 200
Albuquerque, NM 87111

Steven Vogel
10400 Academy Rd. NE Suite 240
Albuquerque, NM 87111

*Attorneys for Defendants:*

Christopher J. DeLara
Terry R. Guebert
Lisa Marie Bolle
P.O. Box 93880
Albuquerque, NM 87199